IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ROBERT L. KIRKLAND, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:22-cv-759-O-BP |
| § | |
| COMMISSIONER OF § | |
| SOCIAL SECURITY, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Robert L. Kirkland ("Kirkland") applied for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income benefits ("SSI") under the Social Security Act ("SSA"). The Commissioner denied his application, deciding that he was not disabled. Kirkland appealed. At issue is whether substantial evidence supports this decision when the administrative record lacks a medical opinion addressing how Kirkland's alleged severe impairments affect his ability to work. Finding that substantial evidence does not support the decision, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** and **REMAND** this action for further proceedings.

**I.     BACKGROUND**

Sixty-two-year-old Kirkland seeks disability benefits under Title II and Title XVI of the SSA, claiming disability status since September 28, 2019. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 13-1 at 299. Kirkland claims that he suffers from vertigo, diabetes, stents placed for heart conditions, and lesions. Tr. 326. The Commissioner decided that he was not disabled and denied his application initially and upon reconsideration. Tr. 100-01; 132-33. Kirkland requested a

hearing before an Administrative Law Judge ("ALJ") (Tr. 188-89), who conducted the hearing (Tr. 35-66) and affirmed the Commissioner's denial in a twenty-page decision. Tr. 15-34. After the Appeals Council denied review (Tr. 1-7), Kirkland filed this civil action seeking judicial review under 42 U.S.C. §§ 405(g) and 416(g). *See* ECF No. 1; *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (citing 20 C.F.R. § 416.1400(a)(5)) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). Kirkland argues that substantial evidence does not support the ALJ's residual functional capacity ("RFC") determination. ECF No. 18 at 9.

## II.  STANDARD OF REVIEW

Titles II and XVI of the SSA govern the DIB and SSI programs, respectively. *See* 42 U.S.C. §§ 401-434, 1381-1383f. Claimants seeking benefits under either program must prove that they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating the "relevant law and regulations governing the determination of disability under a claim for [DIB] are identical to those governing the determination under a claim for [SSI]"). A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* §§ 404.1572, 416.972. Second, the

2

claimant must have a severe impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's RFC and considers his past relevant work ("PRW"). *See id.* §§ 404.1520(a)(4), (e)-(f), 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite his limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his PRW considering his RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis,* 837 F.2d at 1382. "Substantial evidence

is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris,* 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III.   ANALYSIS

### A.   The ALJ included additional physical limitations in the RFC in concluding that Kirkland was not disabled.

The Commissioner, acting through the ALJ, completed the five-step evaluation process. *See* Tr. 20-28. First, the ALJ found that Kirkland has not engaged in substantial gainful activity since September 28, 2019. *Id.* at 20. Second, he found four medically severe impairments: coronary artery disease, with arteriosclerosis of the native coronary artery, angina pectoris, and status post catheterization and stenting; type II diabetes mellitus, with diabetic polyneuropathy, and mild-to-moderate non-proliferative diabetic retinopathy; central vestibular vertigo/benign positional vertigo; and obesity. *Id.* at 21. Third, he identified no impairment or combination of impairments that qualify under the federal regulatory list. *Id.* at 22. He then assessed Kirkland's RFC:

> After careful consideration of the entire record, I find that the claimant has the [RFC] to perform light work defined as in 20 C.F.R. [§§] 404.1567(b) and 416.967(b) except he can frequently balance

4

>on uneven surfaces or terrain, can frequently stoop, kneel, crouch, or crawl; can frequently climb stairs or ramps, can never climb ladders, ropes, or scaffolds, can never be exposed to unprotected heights or moving machinery parts, can never operate a motor vehicle or heavy equipment, and can occasionally be exposed to vibrations.

Tr. 24. Using this RFC determination and hearing testimony from a vocational expert ("VE"), the ALJ determined at step four that Kirkland could perform PRW, specifically as a Construction Superintendent. *Id.* at 27-28. The step four finding meant that Kirkland was ineligible for DIB or SSI because he was not disabled, a finding that terminated the ALJ's evaluation. *Id.* at 20; *see Lovelace*, 813 F.2d at 58. Kirkland urges reversal because the ALJ provided insufficient medical evidence to support his RFC evaluation.

> **B.     Reversal and remand are necessary because substantial evidence does not support the ALJ's RFC determination.**

Determining a claimant's RFC is the ALJ's responsibility. 20 C.F.R. § 404.1546(c); *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). Even if the ALJ errs, reversal is only proper if prejudice results. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Here, the ALJ's decision proceeded through the five-step evaluation process. Tr. 20-28. The ALJ determined Kirkland's RFC after step three. *Id.* at 24. In arriving at the RFC, the ALJ analyzed two medical opinions of record, provided by state agency medical consultants ("SAMC") who each opined that Kirkland was "capable of performing work requiring light exertion, and must avoid even moderate exposure to hazards." *See Id.* at 26. Hazards could include operating machinery and working at elevated heights. *Id.* at 85. The ALJ found their opinions "only somewhat persuasive" and determined that "a reading of the record in the light most favorable to the claimant can support additional limitations." *Id.* at 26. The additional postural and environmental limitations, previously unaccounted for, included balancing on uneven surfaces, frequent stooping, kneeling, crouching,

crawling, or climbing stairs or ramps, and occasional exposure to vibrations. *Id.* at 27. The ALJ concluded that the "evidence and the record as a whole, establishes that the claimant's impairments have generated the limitations included in this [RFC]." *Id.*

Kirkland contends that substantial evidence does not support the ALJ's formulation of his RFC, as the ALJ "constructed the RFC out of whole cloth." ECF No. 18 at 9. He alleges that the ALJ relied on no medical opinion to guide him while addressing how Kirkland's severe impairments limited his ability to work. ECF No. 18 at 10. He claims that this was harmful error. *See Williams v. Astrue,* 355 F. App'x 828, 832 (5th Cir. 2009); *Frank v. Barnhart,* 326 F.3d 618, 622) (5th Cir. 2003) (The medical expertise of the SSA is reflected in regulations; it is not the "birthright of the lawyers who apply them."). The Commissioner responds that because the ALJ reviewed all relevant evidence in the record, he properly assessed Kirkland's RFC. ECF No. 19 at 4-5. The Commissioner argues in her brief that the ALJ is solely responsible for determining a claimant's RFC, but a few sentences later also recognizes that he must "assess all the objective and subjective evidence and formulate the RFC from that analysis." *Id.* at 5; *Taylor,* 706 F.3d at 602-03. Because *Williams* applied the Fifth Circuit's holding in *Ripley,* 67 F.3d at 552, the inquiry begins there.

1. ***Ripley* and the Court.**

Substantial evidence did not support the ALJ's RFC determination in *Ripley*, thus warranting remand, because the record "d[id] not clearly establish…the effect [the claimant's] condition had on his ability to work." *Ripley*, 67 F.3d at 557. The ALJ found Ripley not disabled because he could perform sedentary work. *Id.* Even though the record included "a vast amount of medical evidence," including "reports discussing the extent of Ripley's injuries," no reports from

"qualified medical experts" showed how Ripley's condition affected his ability to perform sedentary work. *Id.* at 557 & n.27.

The Court recognizes *Ripley*'s proposition that reversible error lies where the "record does not clearly establish" how an applicant's condition affects his ability to work. *Thornhill v. Colvin*, No. 3:14-cv-335-M, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014) (quoting *Ripley*, 67 F.3d at 557), *rec. adopted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015). The claimant in *Thornhill* alleged disability from depression but was found "not disabled." *Id.* at *1. Finding the claimant's symptoms mild, the ALJ determined than the claimant was less limited than did a registered nurse, physician, and licensed professional counselor, but more limited than did two SAMCs. *Id.* at *9. The RFC determination reflected an ability to work, but was erroneous to the extent that it "added mental limitations . . . to accommodate for [the claimant's] mild symptoms." *Id.* at *10. Even though adding mental limitations suggested that the ALJ was "simply giving [the claimant] the benefit of the doubt as to what limitations might apply," the only supporting evidence was progress notes that did not address the claimant's ability to work. *Id.* While the ALJ could depart from the relevant medical opinions, it then "became incumbent upon the ALJ to obtain an expert medical opinion" to fill the gap. *Id.* (citing *Ripley*, 67 F.3d at 557).

The Court again found reversible error where an ALJ determined a mental RFC after rejecting the only medical opinions that could support the determination. *Fitzpatrick v. Colvin*, No. 3:15-cv-3202-D, 2016 WL 1258477, at *7–8 (N.D. Tex. Mar. 31, 2016). Two SAMCs found the claimant's alleged mental impairment not severe, creating only mild issues with daily living; social functioning; and "maintaining concentration, persistence, or pace." *Id.* at *7. The ALJ rejected their opinions and found the claimant "more limited." *Id.* at *7 & n.6. The RFC provided that the claimant could function in a "simple work environment" featuring "simple routine instructions"

and "occasional contact with coworkers and supervisors." *Id.* at \*7. But only the rejected consultants' opinions supported such an RFC. *Id.* at \*8. Applying *Ripley* and *Thornhill*, the Court construed the ALJ's RFC determination as an improper attempt to address the claimant's mental impairments without relying on a supporting medical opinion. *Id.* at \*7–8.

In *Ripley*, *Thornhill*, and *Fitzpatrick*, the ALJ's failure to obtain a medical opinion addressing how the respective claimants' impairments affected their ability to work warranted reversal and remand in each instance. *See Ripley*, 67 F.3d at 557–58; *Thornhill*, 2015 WL 232844, at \*11; and *Fitzpatrick*, 2016 WL 1258477, at \*12. The undersigned's recommendations in *Alexander v. Saul*, No. 7:19-cv-00127-M-BP, 2020 WL 4573847 (N.D. Tex. July 9, 2020), *rec. adopted*, 2020 WL 4569034 (N.D. Tex. Aug. 7, 2020) and *Bowles v. Comm'r of Soc. Sec.*, No. 7:20-cv-00112-O-BP, 2021 WL 7451148, at \*3 (N.D. Tex. Oct. 19, 2021), *rec. adopted*, 2022 WL 768546 (N.D. Tex. Mar. 14, 2022) reached similar conclusions in cases with similar facts.

### 2. There is no substantial evidence to support Kirkland's severe impairments finding.

The record does not clearly establish the effects of Kirkland's severe impairments on his ability to work. Just as in *Fitzpatrick* and *Thornhill*, the ALJ departed from the SAMCs' opinions (Tr. 67, 78, 89, 102, 117) and determined that Kirkland's impairments required more limitations. Tr. 27. As in *Fitzpatrick*, the SAMCs' opinions support the RFC determination to some extent. Tr. 84, 109. Each acknowledges that Kirkland had some exertional limitations involving his ability to lift and carry and the number of hours in a day that he could spend sitting, standing, or walking. *Id*. They did not discuss much about Kirkland's PRW other than to list those jobs and write that he did have the RFC to perform his PRW, stating that "the evidence shows that the individual has some limitations in the performance of certain work activities; however, these limitations would not prevent the individual from performing PRW as [a] Superintendent." *Id.* at 87, 112.

While the ALJ was free to reject these medical opinions in the record, he then had to obtain a medical opinion supporting which work tasks Kirkland could perform despite his impairments. *Fitzpatrick*, 2016 WL 1258477, at *7 (applying *Thornhill*, 2015 WL 232844, at *10, and *Ripley*, 67 F.3d at 557–58). The ALJ did not do so, but instead, as in *Thornhill* and *Fitzpatrick*, adjusted the RFC determination for slightly modified postural and environmental limitations. Tr. 25-27; 84-88; 109-116. Because the ALJ did not cite a medical opinion that supported his conclusion, the Court must conclude that he improperly used his lay interpretation of raw medical data to accommodate Kirkland's severe impairments. *See Williams*, 355 F. App'x at 832, & n.6. Reversal is thus proper, even if the ALJ was giving Kirkland more limitations than otherwise would have been required. *See Thornhill*, 2015 WL 232844, at *10.

The ALJ "has a duty to develop the facts fully and fairly" when the record lacks "reports from qualified medical experts" explaining how a claimant's condition affects his ability to work, "no matter how 'small'" the effects may be. *Ripley*, 67 F.3d at 557 & n.27. The Commissioner claims that a fair reading of the ALJ's decision is that "the ALJ was properly interpreting the medical evidence to determine Kirkland's capacity for work." ECF No. 19 at 5. However, because medical opinions do not support the narrative to explain how Kirkland's severe impairments affect his ability to work, the Commissioner's argument falls short.

The ALJ's decision cites many medical reports supporting his finding that Kirkland was not disabled. The ALJ could tell from Kirkland's treatment records that there were only "few signs consistent with functional limitations." Tr. 26, 469, 606; ECF No. 19 at 6. He also noted that although some November 2019 reports showed that Kirkland exhibited tenderness and decreased ranges of motion in his hip, "physical examinations dated after this reflect even fewer signs consistent with functional limitation." Tr. 849-49, 2493, 2855; ECF No. 19 at 6.

9

The ALJ's decision also cited examples where the records conflicted and where he believed some limitations were warranted, aligning more closely with the SAMCs' findings. For example, the ALJ noted that

> although Kirkland infrequently exhibited signs consistent with significant dizziness or instability, his consistent complaints of vertigo, the above-described vestibular abnormalities, and his emergency room visits for apparently related symptoms indicate that he did experience this symptom, and that it has likely limited his ability to perform work requiring him to lift or carry objects that might generate significant injury if dropped, and to work in areas with even moderate exposure to hazards.

Tr. 26-27; ECF No. 19 at 7. He also observed that "although treating and examining providers infrequently observed signs consistent with cardiovascular or diabetic limitation, Kirkland's consistently and occasionally extremely high A1c readings, and the necessity during the relevant period for cardiovascular stenting indicates that these impairments have also likely generated some level of exertional limitation." Tr. 27; ECF No. 19 at 7.

The SAMCs' opinions, which the ALJ rejected in relevant part, addressed Kirkland's ability to perform his PRW and his overall disability status. Tr. 27. However, the ALJ acknowledged that the SAMCs' opinions were only somewhat persuasive and that further limitations were warranted. *Id.* Once the ALJ made these incremental changes, he was left with no medical assessment to show how Kirkland's medical conditions would translate to these new postural and environmental limitations. *See* Tr. 97, 111; *see also Winston v. Berryhill*, 755 F. App'x 395, 403 (5th Cir. 2018) (citing 20 C.F.R. § 404.1527(a)(2)) ("[T]he definition of a 'medical opinion' requires both an evaluation of symptoms and an expression of judgment regarding a claimant's capabilities and restrictions.").

As in *Ripley*, the Commissioner points to other parts of the ALJ's decision suggesting that the treatment records, consultative examination reports, SAMCs findings, and Kirkland's

10

subjective self-reports, all support the ALJ's findings. ECF No. 19 at 6-8; *see Ripley*, 67 F.3d at 557. The Commissioner argues that "the ALJ considered all of the objective and subjective evidence of record, and substantial evidence supports the RFC assessment" ECF No. 19 at 8. The Commissioner is correct that the ALJ considered and cited this evidence in his decision. Tr. 25-27. Nevertheless, the ALJ may not rely on his own unsupported opinion as to what limitations Kirkland's medical conditions require, which is what the ALJ did here. *Williams,* 355 F. App'x at 832 n.6; *see also Graves v. Kijakazi,* No. 3:22-cv-0107-L-BH, 2023 WL 2025247 at *16-17 (N.D. Tex. January 31, 2023).

ALJs enjoy complete discretion regarding whether to order a consultative examination. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). But in circumstances like this, if the ALJ elects not to do so, he must refer to expert opinion evidence to support the limitations that he imposes. ALJs have discretion as to the means, but not the ends. *Id*; *see also Thornhill,* 2015 WL 232844, at *10 (recognizing *Ripley*'s principle that reversible error lies where "the record does not clearly establish" a basis for the vocational limitations imposed).

Developing the record prevents judges from playing the role of doctor, a role for which they are generally ill-equipped. *See Frank,* 326 F.3d at 622. This is true even if in cases like this, where it appears that the ALJ "generously provided for additional limitations" simply to give the claimant "the benefit of the doubt" when expert opinions found the claimant's conditions less limiting. *Thornhill*, 2015 WL 232844, at *10; ECF No. 19 at 8. "While the ALJ could depart from the relevant medical opinions, it then 'became incumbent upon the ALJ to obtain an expert medical opinion' to fill the gap." *Bowles,* 2021 WL 7451148, at *3 (quoting *Thornhill,* 2015 WL 232844, at *10); *see also Silves H. v. Kijakazi,* No. 3:22-cv-286-K-BN, 2022 WL 17345924, at *4 (N.D.

Tex. Nov. 14, 2022) (no supporting substantial evidence where no medical opinions supported the ALJ's additional limitations).

The Court will not reverse the Commissioner's decision where "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). But the ALJ's imposition of additional limitations without the benefit of expert medical opinion necessarily affected Kirkland's substantive rights. *Bowles*, 2021 WL 7451148, at *3-4; *see also Ripley*, 67 F.3d at 557 & n.27 (noting ALJs have "a duty to develop the facts fully and fairly" when the record lacks "reports from qualified medical experts" explaining how a claimant's condition would impact his ability to work, "no matter how small" the effects may be). The absence of a medical opinion addressing Kirkland's ability to work casts doubt on the ALJ's decision. In similar cases where a medical opinion did not support the ALJ's limitations, courts have found reversible error. *See Williams,* 355 F. App'x at 832; *Thornhill,* 2015 WL 232844, at *10-11. Further, because of his age and level of transferrable skills, if he had been unable to perform his PRW due in part to his postural limitations, Kirkland would automatically be found disabled. *See* 20 C.F.R. Part 404, Subpart P, App'x § 202.1 Thus, the Court must reverse the Commissioner's decision no matter how understandable and reasonable the imposed limitations may be. *Mays*, 837 F.2d at 1364.

### IV.    CONCLUSION

Substantial evidence in the record does not support the ALJ's findings regarding Kirkland's RFC due to a lack of supporting medical evidence. The undersigned thus **RECOMMENDS** that Judge O'Connor **REVERSE** and **REMAND** this action for further administrative proceedings.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served

with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    **SIGNED** on April 25, 2023.

                                                 Hal R. Ray, Jr.
                                                 UNITED STATES MAGISTRATE JUDGE